[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Nasal v. Miami Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-2993.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2993

THE STATE EX REL. NASAL, JUDGE, *v.* MIAMI COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Nasal v. Miami Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-2993.]**

*Prohibition—Writ of prohibition sought to prevent judicial candidate's name from appearing on ballot—Relator alleges candidate failed to satisfy R.C. 1901.06's six-years-of-practicing-law requirement—Board of elections did not abuse its discretion or act in clear disregard of applicable law by denying the protest—Writ denied.*

(No. 2021-0962—Submitted August 25, 2021—Decided August 31, 2021.)

IN PROHIBITION.

_____

**Per Curiam.**

**{¶ 1}** Relator, Miami County Municipal Court Judge Gary A. Nasal, filed a protest with respondent, the Miami County Board of Elections, challenging its decision to certify Jessica A. Lopez to the ballot as a candidate for municipal-court

judge in the November 2021 election. After an evidentiary hearing, the board denied the protest. Judge Nasal then commenced this original action for a writ of prohibition. For the reasons set forth herein, we deny the writ.

## I. Background

**{¶ 2}** Lopez submitted a declaration of candidacy to appear on the November 2021 ballot as a candidate for Miami County municipal-court judge. Judge Nasal, who is seeking reelection to the same court, filed a protest with the board challenging Lopez's candidacy on the ground that she did not have sufficient experience practicing law in Ohio. To serve as a municipal-court judge, a person must be admitted to the practice of law in this state and "shall have been, for a total of at least six years preceding appointment or the commencement of the judge's term, engaged in the practice of law in this state."[1] R.C. 1901.06.

**{¶ 3}** On July 27, 2021, the board held a public hearing on Judge Nasal's protest. The evidence established that Lopez was admitted to the Ohio bar in November 2006. According to her resume, Lopez's professional experience consists of the following:

- Between 2006 and 2009, she worked as an attorney in two law firms, Lopez, Severt and Pratt, Co., L.P.A., and the Law Offices of Scott D. Rudnick.

- Between 2009 and 2013, she operated her own practice, serving as guardian ad litem ("GAL") in juvenile and domestic-relations cases in Miami, Darke, and Shelby Counties.

- From 2013 to the present, she has been the Miami County recorder.

**{¶ 4}** At the conclusion of the hearing, the board unanimously denied the protest without explanation. On August 5, Judge Nasal commenced this action for

---

1. R.C. 1901.06 also requires that the person be a qualified elector and a resident of the territory to which the judge is elected or appointed. These requirements are not at issue.

a writ of prohibition to prevent the board from certifying Lopez's candidacy to the November 2021 ballot.

## II. Legal analysis

### A. *Standard of review*

{¶ 5} Prohibition is the appropriate remedy to challenge a board of elections' decision to place a candidate on the ballot following an evidentiary protest hearing. *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 13. When we review the decision of a county board of elections in a prohibition matter, the standard of review is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable law. *Id*. at ¶ 14. In this case, there is no allegation of fraud or corruption.

{¶ 6} Judge Nasal suggests that we should review the board's decision de novo because this court has exclusive jurisdiction to define the practice of law in Ohio. *See Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 39. However, in *State ex rel. Carr v. Cuyahoga Cty. Bd. of Elections*, 63 Ohio St.3d 136, 586 N.E.2d 73 (1992), *superseded by statute on other grounds, as stated in Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 21, we held that a board of elections "did not usurp the exclusive jurisdiction of this court" when it decided whether a judicial candidate was engaged in the practice of law. *Id*. at 138.

{¶ 7} Accordingly, we must determine whether the board of elections abused its discretion or acted in clear disregard of applicable law when it concluded that Lopez satisfies the six-year-practice requirement in R.C. 1901.06.

*B. What constitutes the practice of law?*

{¶ 8} Whether a judicial candidate's past activities constituted the practice of law is a mixed question of law and fact. *Emhoff*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, at ¶ 19.

> "The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law."

*State ex rel. Devine v. Schwarzwalder*, 165 Ohio St. 447, 453, 136 N.E.2d 47 (1956), quoting *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934). "The critical enquiry is whether a particular task or activity 'require[s] legal analysis.' " *Emhoff* at ¶ 22, quoting *Columbus Bar Assn. v. Verne*, 99 Ohio St.3d 50, 2003-Ohio-2463, 788 N.E.2d 1064, ¶ 5.

{¶ 9} Gov.Bar R. I(10)(B) (formerly Gov.Bar R. I(9)(B)) provides standards for the practice of law for purposes of admitting an applicant to the Ohio bar without examination. We have looked to these standards for guidance in cases involving ballot-access cases, *see Emhoff* at ¶ 21 (discussing how the standards articulated in former Gov.Bar I(9)(B) coincide with this court's statements in ballot-access cases involving practice-of-law requirements). Those standards provide that the practice of law includes work for an entity so long as the work "involved the *primary* duties of furnishing legal counsel, drafting legal documents and pleadings, interpreting and giving advice regarding the law, or preparing,

trying, or presenting cases before courts, tribunals, executive departments, administrative bureaus, or agencies." (Emphasis added.) Gov.Bar R. I(10)(B)(2).

{¶ 10} R.C. 1901.06 requires a municipal-judge candidate to have engaged in the practice of law "for a total of at least six years preceding" the commencement of the judicial term. Because the statute does not use the definite article—*the* six years preceding—a candidate may qualify based on six years of practice any time prior to taking the bench. *See State ex rel. Rocco v. Cuyahoga Cty. Bd. of Elections*, 151 Ohio St.3d 306, 2017-Ohio-4466, 88 N.E.3d 924, ¶ 17 (lead opinion) (construing similar language in the Westlake city charter). Lopez produced evidence of three categories of work.

### C. Lopez's employment between 2006 and 2009

{¶ 11} Lopez was hired in 2006 by the law firm of Lopez, Severt, and Pratt. While working for the firm, Lopez performed legal research and drafted collection complaints. From May 12, 2007, until April 24, 2009, she worked as an associate with the Law Offices of Scott D. Rudnick. That law office focuses on real estate, banking law, and civil litigation. During that time, Lopez provided legal advice to clients and represented clients in court.

{¶ 12} Counsel for Judge Nasal conceded at the protest hearing that these activities, totaling approximately 30 months, constituted the practice of law. We agree that this activity constituted the practice of law.

### D. Lopez's solo practice and service as guardian ad litem from 2009 to 2013

{¶ 13} Lopez testified that after she left the Rudnick firm in 2009, she decided to open her own practice and work out of her home. She opened an Interest on Lawyers Trust Account, secured malpractice insurance, began seeking clients, and underwent a background check and precertification to serve as a GAL. In 2012, she received GAL appointments in Miami, Darke, and Shelby Counties.

{¶ 14} Judge Nasal contends that Lopez's service as a GAL is not the practice of law. But that formulation misstates the issue. We recognized in *Emhoff*

that a new attorney may be engaged in the full-time practice of law as she builds a practice, even though she will not yet have much business. 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, at ¶ 41. It was not an abuse of discretion for the board to accept Lopez's testimony that from May 2009 through December 2012 she spent time building a solo practice and therefore engaged in the practice of law.

{¶ 15} During this time, Lopez also engaged in the practice of law by virtue of her GAL appointments. As a GAL, she gathered information in each case by meeting with the child, the parents, and other witnesses, and she used the information to assess the child's best interests and prepare a report. She attended all hearings, testified, and "typically at the end of the case * * * ask[ed] follow-up questions." In addition to questioning witnesses in hearings, she undertook another quintessential legal activity: filing motions on her own behalf.

{¶ 16} Judge Nasal questions whether serving as a GAL constitutes the practice of law, given that a person does not have to be an attorney to serve as a GAL. According to the judge, in order to have engaged in the practice of law, Lopez would have had to have been appointed as *legal counsel* for her wards, in addition to GAL. And by her own admission, Lopez never received an appointment as legal counsel for a ward.

{¶ 17} Judge Nasal is correct that the two roles are different. "The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law." *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985); *see also* Sup.R. 48.01(B) and (C). But his conclusion—that a GAL cannot be engaged in the practice of law—is incorrect.

{¶ 18} The Rules of Superintendence, which govern GALs, make clear that service in that role *may* constitute the practice of law. Sup.R. 48.03(A)(7) contemplates that an attorney-GAL will "file pleadings, motions, and other

6

documents as appropriate, and call, examine, and cross-examine witnesses pursuant to the applicable rules of procedure." A nonattorney-GAL, by contrast, is enjoined by the rules to "avoid engaging in conduct that constitutes the unauthorized practice of law." Sup.R. 48.03(A)(7). And the nonattorney-GAL must ask the court to appoint counsel who can file pleadings and motions and engage in the other quintessential litigation activities listed above. Sup.R. 48.03(A)(10). As an attorney appointed to serve as a GAL, Lopez was engaged in the practice of law.

{¶ 19} Given these facts, the board did not abuse its discretion in concluding that Lopez was engaged in the practice of law during the time she spent building a solo practice and serving as an attorney-GAL, which totaled at least 42 months.

*E. Lopez's service as county recorder from 2013 until the present*

{¶ 20} Lopez also contends that her service as the Miami County recorder, a position she has held since 2013, constitutes the practice of law. But we need not consider this argument, because Lopez's 30 months working for law firms and 42 or more months in solo practice are sufficient to satisfy the six-year-practice requirement in R.C. 1901.06.

### III. Conclusion

{¶ 21} Judge Nasal has failed to show that the board abused its discretion or acted in clear disregard of applicable law by denying the protest and placing Lopez's name on the November ballot. We deny the writ of prohibition.

Writ denied.

O'CONNOR, C.J., and DONNELLY and BRUNNER, JJ., concur.

DEWINE and STEWART, JJ., concur in judgment only.

FISCHER, J., dissents, with an opinion.

KENNEDY, J., not participating.

_____

**FISCHER, J., dissenting.**

{¶ 22} Ohio law requires a municipal-court judge to have at least six years of experience practicing law as a licensed attorney prior to taking the bench. R.C. 1901.06. In this case, Jessica A. Lopez falls well short of that statutory requirement. Because, however, this court adheres to an overly deferential standard of review in this specific type of election case and computes the time an attorney spends practicing law in a rather confusing way, the lead opinion has ignored that fact and cleared the way for Lopez's name to appear on the ballot as a judicial candidate anyway. Accordingly, for the reasons that follow, I respectfully dissent.

## I. THE STANDARD OF REVIEW

{¶ 23} Traditionally, this court has reviewed a board of elections' decision regarding whether a judicial candidate has engaged in the practice of law for an abuse of discretion. *State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 14. However, as I have stated in the past, that approach seems inconsistent with our approach when determining whether a person has engaged in the practice of law in other contexts and with our superintendent authority over the practice of law under Article IV, Section 2(B) of the Ohio Constitution. *Id.* at ¶ 44-49 (Fischer, J., concurring in judgment only). Consequently, I would adopt a de novo standard of review, giving no deference to the determination made by a board of elections as to what constitutes the practice of law.

## II. 2.5 + 1 = 3.5, NOT 6

{¶ 24} Taking a fresh look here, I would conclude that Lopez lacks the experience practicing law that is required to qualify as a judicial candidate in Ohio.

{¶ 25} I agree with the lead opinion that Lopez no doubt has at least 2.5 years (30 months) of experience practicing law from her time working at two different law firms between November 2006 and April 2009. I also agree with the lead opinion that Lopez's work as a guardian ad litem constitutes the practice of

law. After all, she could undertake certain actions in that role that a nonlawyer could not, Sup.R. 48.03(A)(9), and she also could have been disciplined for violating the Rules of Professional Conduct while serving in that role, *Disciplinary Counsel v. Pullins*, 127 Ohio St.3d 436, 2010-Ohio-6241, 940 N.E.2d 952, ¶ 17-27.

{¶ 26} Where I part ways with the lead opinion, though, is in its concluding that Lopez's sporadic and infrequent work as a guardian ad litem amounts to the additional 3.5 years (42 months) of practice that Lopez needs to reach the 6 years of practice required by law.

{¶ 27} The record in this case indicates that Lopez served as a guardian ad litem in just 12 cases between 2009 and 2013. It also indicates that her work in each of those cases did not involve more than a handful of hours. In fact, in one representative case, it appears that she performed just 15.8 hours of work. And contrary to the lead opinion's suggestion that Lopez was building a practice beyond that, there is very little in the record that would suggest that Lopez did anything besides serve as a guardian ad litem in those dozen or so cases during the time period in question.

{¶ 28} Despite that, the lead opinion has transformed what can charitably be described as a little over a year's worth of work (assuming we give Lopez a month of credit for each case in the record that she worked on) into 3.5 years' worth of work.

{¶ 29} I understand that this court has "never established a minimum threshold for the amount of work [an] attorney must perform" to qualify as a judicial candidate, *Emhoff*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, at ¶ 41, and has declined to read a "full-time" practice requirement into the statutory text, *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections*, 70 Ohio St.3d 413, 415, 639 N.E.2d 78 (1994), but this court should not continue down this road of treating

sporadic and infrequent work the same as full-time practice unless it wishes to render the practice requirement for judicial candidates completely meaningless.

**{¶ 30}** Indeed, the word "practice" necessarily implies something more than de minimis activity. *See, e.g.*, *Webster's Third New International Dictionary* 1780 (2002) (defining "practice" as the "actual performance or application of knowledge as distinguished from mere possession of knowledge" and "practicing" as "actively engaged in an indicated career").

**{¶ 31}** That reality, that practicing requires regular and active work, is likely why our own rules—the same ones the lead opinion looks to here—ask out-of-state lawyers seeking to practice law in Ohio without taking the bar exam to demonstrate that they were engaged in the practice of law in another jurisdiction on "a *fulltime* basis" for at least five years. (Emphasis added.) Gov.Bar R. I(10)(A)(2)(b) and (c). It is also why our rules seem to distinguish between full- and part-time law professors, counting only the former as practicing law. Gov.Bar R. I(10)(B)(5).

**{¶ 32}** Of course, the puzzling result that the lead opinion reaches here can be seen best not through a dictionary definition or this court's own rules, but with a couple of examples in other settings where it is doubtful that minimal engagement in an activity would be recognized to the same extent that the lead opinion has recognized Lopez's activity from 2009 to 2013.

**{¶ 33}** Take, for instance, a college student enrolled in a typical four-year bachelor's degree program. A program like that usually requires students to successfully complete 120 credit hours. Now, there may be some students enrolled in the program who finish those requirements in less time and still others who take a little longer. However, no college or university will ever confer a degree upon a student who signs up for 3 credit hours a semester and has a total of just 24 credit hours by the end of his or her fourth year. But that is exactly what the lead opinion is doing here when it treats a handful of hours practicing law as if they were worth years of practice.

{¶ 34} Next, and similarly, consider a professional baseball player who makes it to the big leagues and starts accruing "service time." To earn a single year of service time, that player must spend 172 days out of the 187-day season on the major-league roster or injured list. https://www.mlb.com/glossary/transactions/service-time (accessed Aug. 30, 2021) [https://perma.cc/X3VQ-WZ5P]. In other words, a minor-league player who receives a September call-up, when the season is winding down and the number of roster spots is expanded from 25 to 40, does not get a full year's worth of credit for the 30 or so days he spends on the big-league roster. With the way we do things here, those players might want to explore a career in the law. If they did, they'd be sitting on a much more comfortable bench in no time.

{¶ 35} Accordingly, I would back away from the trend this court started in *Kelly*, 70 Ohio St.3d 413, 639 N.E.2d 78, and *Emhoff*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, of treating part-time practice the same as full-time practice, and I would say in this case that Lopez's seemingly infrequent work as a guardian ad litem, while practice, does not get her the remaining 42 months of experience practicing law that she needs to qualify as a judicial candidate.

{¶ 36} And because I would not consider her work as a county recorder the practice of law, *see* Gov.Bar R. I(10)(B)(4) (stating that employment as a local government official counts as the practice of law only when it is exclusively available to attorneys), I would hold that Lopez has at most 3.5 years of practice under her belt and falls short of the 6 years of practice required under R.C. 1901.06. Therefore, I would grant the writ requested.

### III. CONCLUSION

{¶ 37} Thus, because I would apply a different standard of review from the one employed by the lead opinion and because that leads me to a different conclusion about whether a writ of prohibition should issue here, I respectfully dissent.

_____

Bieser, Greer & Landis, L.L.P., David C. Greer, and Kevin C. Quinlan, for relator.

Anthony E. Kendell, Miami County Prosecuting Attorney, and Christopher L. Englert, Chief Civil Assistant Prosecuting Attorney, for respondent.

_____